Not for Publication

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NOREAL LAYNE MAYS.,** | |
| Petitioner, | Civil Action No. 18-16043 (ES) (CLW) |
| v. | OPINION |
| **EXPRESSJET AIRLINES, INC,** *et al.*, | |
| Respondents. | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendants ExpressJet Airlines Inc. and United Airlines, Inc.'s ("Defendants") objection to the Honorable Magistrate Judge Cathy Waldor's report and recommendation (D.E. No. 41 (the "R&R")) that the Undersigned grant plaintiff Noreal Layne Mays's ("Plaintiff") motion to remand this action to state court (D.E. No. 31). (D.E. No. 42 ("Objection")). Plaintiff did not respond to Defendants' Objection, choosing to rely on her underlying motion papers. The Court has reviewed the relevant submissions and decides this matter on the papers. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Objection is overruled, and the Court adopts Judge Waldor's R&R in full.

**I.      Background**

Finding no clear error, the Court adopts and incorporates by reference the facts as laid out by the background section of the R&R, to which Defendants do not object. (*See* R&R at 1–2). The Court discusses specific facts in connection with its analysis below.

## II.     Standard of Review

### A.     Objections to R&Rs

When a magistrate judge addresses motions that are considered "dispositive," such as to grant or deny a motion to remand an action to state court, a magistrate judge will submit a Report and Recommendation to the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72; L. Civ. R. 72.1c(2); *see also In re U.S. Healthcare,* 159 F. 3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, when a party objects to an Report and Recommendation, "the district court must make a *de novo* determination of those portions to which the litigant objects." *Leonard Parness Trucking Corp. v. Omnipoint Commc'ns, Inc.,* No. 13–4148, 2013 WL 6002900, at *2 (D.N.J. Nov.12, 2013) (citing 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(b), and L. Civ. R. 72.1(c)(2)). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). The district court "may also receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

### B.     Remand and Diversity Jurisdiction

Under 28 U.S.C §§ 1441 and 1446, a party may remove a civil action from state court to federal court if the district court has original jurisdiction over the action and the party removing the action does so within thirty days after receipt of the initial pleading. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Pursuant to 28 U.S.C. § 1332(a)(1), "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between" citizens of different states. For purposes of diversity jurisdiction, "[a] natural person is deemed to be a citizen of the state where he is domiciled," which is an individual's "true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). Domicile is recognized by the establishment of: (i) a party's physical presence in a state with (ii) the intent to remain there indefinitely. *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (noting that an individual can change domicile instantly by "tak[ing] up residence at the new domicile, and [ ] intend[ing] to remain there").

In conducting this analysis, the Court is guided by the principle that "[t]he party asserting diversity jurisdiction bears the burden of proof." *Id.* at 288. Thus, a party seeking to remove an action from state court to federal court bears the burden of proving that subject matter jurisdiction exists. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921). Additionally, the Court is also guided by the settled law that removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

**III.    Discussion**

It is undisputed that the amount in controversy exceeds $75,000. (*See* D.E. No. 31 at 5). As such, the only issue before the Court is whether Plaintiff was citizen of New Jersey or Georgia at the time she initiated this action on October 26, 2018. Particularly, a finding that Plaintiff is a citizen of Georgia would destroy complete diversity, since at least one of the Defendants is a citizen of Georgia. (*See id.*).

In ruling that Defendants failed to meet their burden of establishing complete diversity, Judge Waldor held that as the proponent of federal jurisdiction, Defendants "bear the burden of

3

establishing diversity of citizenship," which they did not meet because "the limited jurisdictional discovery established that Plaintiff moved to Georgia on September 28, 2018, where she continues to reside." (R&R at 4). Judge Waldor also held that

> the jurisdiction[al] discovery demonstrated that prior to filing the Original Complaint, Plaintiff intended to move to Georgia and remain there by:
>
> 1. Receiving and accepting a job offer in Atlanta, Georgia on September 11, 2018;
> 2. Applying for a rental apartment in Georgia with a desired move in date of September 28, 2018;
> 3. Moving herself and possessions to Georgia;
> 4. In her sworn declaration, Plaintiff states that she moved to Georgia with no intention of returning to live in New Jersey;
> 5. Forwarding her mail from a New Jersey address to her new Georgia address on September 27, 2018;
> 6. Moving into and signing a two-year leas[e] at an apartment in Georgia; and
> 7. Changing the address associated with her bank account to her new Georgia address.

(*Id.* (record citations omitted)).

Defendants' Objection largely regurgitates the arguments they raised in opposition to Plaintiff's motion for remand. In fact, Defendants simply copy and paste large portions of their opposition brief. (*Compare* Objection at 12–19, *with* D.E. No. 34 at 10–17). At its core, though, Defendants challenge Judge Waldor's R&R on two main grounds. First, that because Plaintiff's state court complaints asserted that Plaintiff was a New Jersey resident, and Plaintiff did not assert Georgia residence until after the matter was removed, Plaintiff now "bears the initial burden of producing sufficient evidence to rebut the presumption in favor of establishing domicile." (Objection at 14–15 (quoting *McCann*, 458 F.3d at 288)). Second, that Judge Waldor gave improper weight to Plaintiff's declaration, and that the R&R did not address several pieces of evidence Defendants cited in support of their position. (*Id.* at 2–4). The Court addresses each

4

argument in turn.

First, the Court finds that Defendants' contention that Plaintiff bore the initial burden of rebutting the presumption in favor of established domicile lacks any merit. As a backdrop, Plaintiff's original complaint (and subsequent amended complaint filed two days later) filed in state court indicated that Plaintiff is a "resident of the State of New Jersey." (D.E. No. 34-1, Ex. A ¶ 1; D.E. No. 1, Ex. B ¶ 1). After removal, Plaintiff's counsel filed an amended complaint stating that Plaintiff had incorrectly pleaded she was a "resident of the state of New Jersey" in the original complaint, and that in fact she is a "resident of the State of Georgia." (D.E. No. 5 ¶¶ 4–5). Plaintiff's counsel also stated, through a sworn declaration and the relevant briefing he submitted and signed pursuant to Rule 11, that the references to Plaintiff's residency in New Jersey had been an error on his part. (*See, e.g.*, D.E. No. 38-1 ¶¶ 3–4 & 7; D.E. No. 31 at 1; D.E. No. 38 at 6–7). Particularly, Plaintiff's counsel declared that prior to the filing of the original complaint Plaintiff had expressed "her clear intentions to not return to New Jersey after moving to Georgia in September 2018" via in an email to him. (D.E. No. 38-1 ¶¶ 3–4 (noting that the email constitutes attorney-client information but offering the email for in camera review).

As an initial matter, it appears that both counsel use the terms residency and domicile interchangeably. The Third Circuit has made quite clear, however, that residency alone is insufficient to establish an individual's citizenship for purposes of diversity jurisdiction. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018) (holding that "[a]lleging residency alone is insufficient to plead diversity of citizenship"); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012) (noting that allegations that "refer to [parties] . . . as 'residents' of their respective states, not as 'citizens' or 'domiciliaries' of those states[,] . . . are jurisdictionally inadequate in [a] diversity of citizenship case"). Thus, on this ground alone the

Court could remand on a finding that the complaint originally filed in state court did not properly plead diversity.

Moreover, Defendants point to absolutely no law, and the Court's own research has uncovered none, supporting the proposition that a counsel's pleading mistake somehow gives rise to the presumption favoring established domicile. Regardless, even if that were the case "the presumption favoring an established domicile places the burden of production on [Plaintiff], but does not affect the burden of persuasion, which remains throughout with the proponent of federal jurisdiction." *McCann*, 458 F.3d at 288. As such, to meet that burden Plaintiff needed only to produce enough evidence substantiating the change in domicile to Georgia. (*See id.*). And here, Plaintiff undoubtedly did just that by producing the evidence identified by Judge Waldor's R&R. (*See* R&R at 4). In fact, aside from the evidence highlighted by Judge Waldor, the Court also notes that Plaintiff's deposition testimony is replete with additional evidence further supporting that finding. For instance, Plaintiff testified that when she left New Jersey for Georgia on September 27, 2018, she brought with her all she could carry in her SUV, including (i) her pet turtle, 55-gallon turtle tank, and tank stand; (ii) "two suitcases, two duffel bags . . . and a rachet strapped on the top of [her] SUV"; as well as (iii) all her electronics and all the clothes that she could fit in her SUV. (D.E. No. 35 ("Pl.'s Dep.") at 268:11–270:7). Further, Plaintiff testified that she left her remaining belongings in a public storage bin for temporary safe keeping. (*Id.* at 267:14–20). Thus, this testimony provides substantial evidence that the moment Plaintiff drove away on September 27, 2018, New Jersey ceased to be her "true, fixed and permanent home and place of habitation." *See Swiger*, 540 F.3d at 182. And together with the other evidence Plaintiff produced, the record strongly supports Plaintiff's contention that before filing this action she not only was residing in Georgia, but that she intended to remain there indefinitely. Having met that

initial burden of production, any presumption to the contrary instantly disappeared and the burden turned to Defendants to prove otherwise. *See, e.g.*, *Freidrich v. Davis*, 767 F.3d 374, 379 (3d Cir. 2014). Accordingly, the Court overrules Defendants' first objection.

Defendants next argue that Judge Waldor improperly ascribed significant weight to Plaintiff's declaration that she intends to remain in Georgia. (Objection at 42 (citing *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir. 1968)). But while the Third Circuit has stated that "[o]ne's testimony as to his intention to establish a domicile . . . cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct . . . ," *Korn*, 398 F.2d at 691, the Third Circuit has also outlined that statements of intention to reside in a particular location should not be disregarded when they are "buttressed, not contradicted, by [a party's] course of conduct at the time she filed her complaint," *Washington v. Hovensa LLC,* 652 F.3d 340, 347 (3d Cir. 2011); *see also Freidrich*, 767 F.3d at 378 (relying on party's own testimony about his intentions to remain in Germany to conclude that the party was no a citizen of Pennsylvania). And the majority of the competent evidence here buttresses Plaintiff's sworn declaration as to her intentions to remain in Georgia, since she (i) received and accepted a job offer in Georgia on September 11, 2018, which she started on October 1, 2018 (D.E. No. 31-3 ¶ 14; D.E. No. 31-8); (ii) applied and leased an apartment in Georgia with a move-in date of September 28, 2018 (D.E. No. 31-3 ¶¶ 7 & 10; D.E. No. 31-4); (iii) left New Jersey on September 27, 2018, and moved herself, her pet, and much of her possessions to Georgia, while leaving the rest of her belongings in temporary storage until she could afford to retrieve them (*see* D.E. No. 31-3 ¶ 7; Pl.'s Dep. at 267:14–20; 268:11–271:12); (iv) signing a two-year lease at an apartment in Georgia on October 6, 2018, after the first one did not work out (D.E. No. 31-3 ¶¶ 10–13 & 19; D.E. No. 31-6; D.E. No. 31-7); (v) submitting a Change of Address form to the United States Postal Service on September 27, 2018, forwarding

her mail from a New Jersey address to her new Georgia address (D.E. No. 31-3 ¶ 10; D.E. No. 31-5); and (vi) changing the address associated with her bank account to her new Georgia address. (D.E. No. 31-3 ¶ 18; Pl.'s Dep. at 234:22–235:11).

Still, Defendants go on to argue that the R&R did not expressly address all the evidence in the record. But the Court finds no error on that basis either. For one, the Court need not expressly identify and analyze each piece of evidence a party produces. But more importantly, the evidence advanced by Defendants does not change Judge Waldor's conclusion. For instance, Defendants point out that Plaintiff violated Motor Vehicle Regulations by maintaining a New Jersey driver's license until March of 2019, despite the fact that the cost of the change was "a mere $35," and by not changing her vehicle's registration to Georgia until September of 2019. (Objection at 8). Defendants also point that Plaintiff continued to pay a $32-a-month gym membership in New Jersey for approximately 15 months, instead of paying the $230 cancellation fee. (*Id.*). Additionally, Defendants point out that Plaintiff did not move the bulk of her belongings to Georgia until November of 2018, after she filed this action. (*Id.* at 8–9).

However, Plaintiff's testimony provides undisputed and cogent explanations for these decisions. For instance, on this record it is unquestionable that Plaintiff comes from modest means, and in fact, she testified that her new job in Georgia paid just $15 an hour. (Pl.'s Dep. at 20:4–8). Further, Plaintiff testified that the apartment she originally rented turned out to be "a scam apartment" that was dirty and infected with bugs. (*Id.* at 270:12–17). As such, Plaintiff was forced to scramble to find a new apartment, sign a new two-year lease, and pay a new deposit and first month's rent, while she simultaneously attempted to recover the money she had paid for the first apartment a few days prior. Consequently, Plaintiff testified that she simply lacked the money to rent the moving truck to transport her remaining belongings from New Jersey. (*See, e.g.*, *id.* at

270:9–271:12 (describing how she "had to fight with the housing management" to get her money back and she "paid everything [she] could" to secure the new apartment, leaving her without any "more money to come back [to New Jersey] at the end of October" to collect her remaining belongings); *id.* at 271:20–25 (stating that all the money she had at the time was completely devoted to paying first and second month's rent for the new apartment and she was "waiting to build up some fund to retrieve the rest of [her] belongings")). Similarly, Plaintiff testified that the reason she kept the gym membership was because "$32 [was] easier to pay" than the one time $230 cancellation fee. (*Id.* at 273:5–20 & 237:20–238:11). In fact, Plaintiff testified that despite paying that gym membership she never made use of it again, even when she visited her family. (*Id.* at 273:21–23). Moreover, Plaintiff testified that she did not register her vehicle in Georgia because she was "told it would cost anywhere from five [hundred] to a thousand or more dollars" to do so, and at the time she did not "have that much money set aside." (*Id.* at 273: 14–20). And while replacing her New Jersey driver's license with a Georgia one costs "a mere $35" (Objection at 8), Plaintiff testified she initially did not go forward with the change because she was told that she would need to change her vehicle's registration at the same time, making it prohibitively expensive. (*Id.* at 296:3–16; D.E. No. 31-3 ¶ 24). Accordingly, Plaintiff's undisputed testimony and sworn declaration make it apparent that convenience and lack of money were the deciding factors in each of these decisions. *See Reynolds v. Ranta*, 362 F. Supp. 333, 335 (W.D. Pa. 1973) (finding that defendant was a citizen of Pennsylvania despite the fact that his car was registered in Ohio and he maintained an Ohio driver's license, because it was "apparent in the defendant's deposition that convenience of registering was the deciding factor even though it may have been improper under Pennsylvania law").

Defendants also contend that as of the date she filed this action, Plaintiff "had family

9

members, including her mother and a significant other, who resided in New Jersey and she testified at her deposition on June 18 , 2019, that she continues to return to New Jersey 'whenever she feels like it or whenever she can get time off from work.'"  (Objection at 18 (quoting Pl.'s Dep. at 227:19–228:7)).  Defendants highlight that Plaintiff "referred to Willingboro, New Jersey as her family home has continued to return to New Jersey to see family and for various events."  (*Id.* at 10).  Defendants go on to make much about the fact that Plaintiff testified that she sometimes "sees" a male friend when she visits her family in New Jersey.  (*Id.*).  Tellingly, however, Defendants ignore that approximately half of Plaintiff's family lives in Georgia, including her sister with whom she resides.  (D.E. No. 31-3 ¶ 20).  Defendants also fail to note that Plaintiff testified that between September 2018 and June 2019 (when she was deposed), she had visited New Jersey just three times: in November of 2018 to retrieve the rest of her belongings, and then in February and March of 2019 to visit her family.  (Pl.'s Dep. at 253:16–25).  More importantly, Defendants cite no caselaw standing for the proposition that occasionally visiting one's family in another state or engaging in a long-distance relationship—even a romantic one—with a person in a different state somehow means you are domiciled there.  (*See generally* Objection).

The remaining pieces of evidence do not change the Court's calculous.  For instance, Defendants contend that Plaintiff continued to receive treatment from doctors in New Jersey.  (*Id.* at 9).  But the so called "continued" medical treatments consist of just two medical visits during two of her trips to see her family in New Jersey; one in February and another in March.  Further, Defendants ignore Plaintiff's deposition testimony where she explained she made those visits because she had to care for urgent medical issues.  (*See, e.g.*, Pl.'s Dep. at 247:16–248:15).  Similarly, Defendants belabor the fact that Plaintiff requested an absentee ballot from New Jersey to vote in the November 2018 national election.  (Objection at 8).  But Defendants fail to note that

10

she did not, in fact, receive the ballot and she did not vote via absentee ballot. (Pl.'s Dep. at 241:10–242:21). Regardless, these and the few other pieces of evidence Defendants point to are, on balance, outweighed by Plaintiff's sworn declared intention to remain in Georgia indefinitely, which is corroborated by the majority of the competent evidence in this record. *See, e.g.*, *Freidrich v. Davis*, 989 F. Supp. 2d 440, 444 (E.D. Pa. 2013) (finding that a defendant who resided in Germany was not a Pennsylvania citizen despite the fact that he had requested an absentee ballot where he declared that he intended to return to the United States; had voted in elections by absentee ballot in Cumberland County, Pennsylvania; had a Pennsylvania driver's license, 401K retirement account, and a bank account; and visited his family in Pennsylvania approximately two times per year during the prior five years). And any remaining doubts as to this conclusion simply weigh in favor of remand. *See Steel Valley Auth.*, 809 F.2d at 1010.

In short, the Court finds that Plaintiff was a citizen of Georgia at the time she initiated this action, and therefore, this Court lacks subject-matter jurisdiction. Accordingly, the Court overrules Defendants' Objection and adopts Judge Waldor's R&R in full.

### IV. Conclusion

For the foregoing reasons, the Court adopts Judge Waldor's R&R in full. This matter is remanded to the Superior Court of New Jersey, Essex County. An appropriate Order accompanies this Opinion.